**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JANUARY 30, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                           No. 114227

BRIAN JAMES STONE,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This criminal prosecution under the Michigan eavesdropping statutes requires us to decide whether a conversation held on a cordless telephone is a "private conversation" as that term is used in the statutes. We conclude that, although current technology may allow cordless telephone conversations to be intercepted, such conversations nonetheless can be private conversations under the eavesdropping statutes. Accordingly, we affirm the judgment

of the Court of Appeals.

I

The facts underlying this case occurred while the divorce of defendant Brian Stone from Joanne Stone was pending. During their marriage, the Stones lived next door to Ronald Pavlik. In 1995, defendant became estranged from his wife and moved out of the couple's home, though Joanne continued to live there. After defendant moved from the couple's home, Pavlik told defendant that he owned a police scanner, and that he could listen to, and had been recording, calls Joanne made on her cordless telephone. Defendant asked for the tapes, and told Pavlik to "keep on top of things, tape and find out what was going on."

Joanne suspected that her calls were being monitored because certain people had information about her that they should not have had. In one instance, a friend of the court investigator told Joanne that defendant had told the investigator that he had a tape recording proving that Joanne was pregnant and planning to leave the state. According to Joanne, she had only mentioned these matters in a telephone conversation with a friend. Because of her suspicions, in 1996, Joanne contacted the State Police.

After interviewing several people, the police obtained search warrants for both defendant's and Pavlik's residences.

2

Between the two homes, they found approximately fifteen tapes containing recordings of Joanne's telephone conversations with her family, her friends, and her attorney.

Defendant was charged under the eavesdropping statutes and was bound over for trial. He brought a motion to quash the information, which the circuit court granted because it believed that a person conversing on a cordless telephone could not reasonably expect her conversation to be a "private conversation." The people appealed, and the Court of Appeals reversed, reasoning that the circuit court erred by relying on the concept of a reasonable expectation of privacy. 234 Mich App 117; 593 NW2d 680 (1999). Initially, this Court held this case in abeyance, pending our resolution of *Dickerson v Raphael,* 461 Mich 851 (1999). Thereafter, we granted leave to appeal. 461 Mich 996 (2000).

## II

Because this case arrives here on defendant's motion to quash the information, we must review the magistrate's decision to bind defendant over for trial. A magistrate has a duty to bind over a defendant for trial if it appears that a felony has been committed and there is probable cause to believe that the defendant committed that felony. MCL 766.13; MSA 28.931. Absent an abuse of discretion, reviewing courts should not disturb a magistrate's determination. *People v*

3

*Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979). In the instant case, defendant argues that the magistrate's decision to bind him over was an abuse of discretion because his alleged conduct does not fit within the scope of the eavesdropping statutes. Determining the scope of a criminal statute is a matter of statutory interpretation, subject to de novo review. *People v Denio,* 454 Mich 691, 698; 564 NW2d 13 (1997).

### A. THE EAVESDROPPING STATUTES

Defendant was charged under MCL 750.539c; MSA 28.807(3), which provides:

> Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs, or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

The statutes define "eavesdrop" as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." MCL 750.539a(2); MSA 28.807(1)(2). In the present case, the facts as alleged indicate that Joanne Stone's cordless telephone conversations were wilfully recorded by Ronald Pavlik, without her consent, at defendant's prompting. Because this case involves such alleged wilful "record[ing]," the statutory prohibition against wilful

4

"overhear[ing]" is not before us. Instead, the question before us is whether defendant is correct that the conversations eavesdropped on could not be "private conversations" because they were held on a cordless telephone.

## B. THE MEANING OF "PRIVATE CONVERSATION"

To answer this question, we must first define "private conversation." Determining this phrase's meaning requires us to construe the eavesdropping statutes, and the primary goal of statutory construction is to give effect to the Legislature's intent. *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999). To ascertain that intent, this Court begins with the statute's language. When that language is unambiguous, no further judicial construction is required or permitted, because the Legislature is presumed to have intended the meaning it plainly expressed. *Id.*

Here, the plain language of the eavesdropping statutes does not define "private conversation." This Court may consult dictionaries to discern the meaning of statutorily undefined terms. *Id.* However, recourse to dictionary definitions is unnecessary when the Legislature's intent can be determined from reading the statute itself. *Renown Stove Co v Unemployment Compensation Comm,* 328 Mich 436, 440; 44 NW2d 1 (1950).

5

Despite the Legislature failing to define "private conversation" in the eavesdropping statutes, its intent can be determined from the eavesdropping statutes themselves. This is because the Legislature did define the term "private place." A "private place" is "a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance." MCL 750.539a(1); MSA 28.807(1)(1). By reading the statutes, the Legislature's intent that private places are places where a person can reasonably expect privacy becomes clear. Applying the same concepts the Legislature used to define those places that are private, we can define those conversations that are private. Thus, "private conversation" means a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance. Additionally, this conclusion is supported by this Court's decision in *Dickerson v Raphael,* in which we stated that whether a conversation is private depends on whether the person conversing "intended and reasonably expected that the conversation was private." *Dickerson, supra* at 851.

Although this definition of "private conversation" facially resembles standards that the United States Supreme Court has used in Fourth Amendment cases, those standards developed in the context of law enforcement activity seeking

6

to detect criminal behavior. See *Katz v United States,* 389 US 347, 360; 88 S Ct 507; 19 L Ed 2d 576 (1967) (Harlan, J.). However, our definition of "private conversation" emanates from our eavesdropping statutes, which, by their own terms, do not apply to law enforcement personnel acting within their lawful authority. MCL 750.539g(a); MSA 28.807(7)(a). Because of these differences, we do not rely on the Fourth Amendment jurisprudence, and do not incorporate it into our statute. Rather, we rely only on the eavesdropping statutes' language to define the term "private conversation."

### C. Private Conversations on Cordless Telephones

Defendant invites this Court to hold that, as a matter of law, a conversation held on a cordless telephone cannot be a private conversation. He relies on language in the Court of Appeals decision in *Dickerson v Raphael,* 222 Mich App 185, 194; 564 NW2d 85 (1997), rev'd 461 Mich 851 (1999), to argue that a cordless telephone works by sending a radio-like signal from the telephone's handset to its base, and that users of cordless telephones know that these signals can be intercepted by devices including other cordless telephones and police scanners. This knowledge, he concludes, "renders unreasonable an expectation of privacy" in a cordless telephone conversation. *Id.*

7

We decline defendant's invitation because such an interpretation would negate an express protection in the eavesdropping statutes. Specifically, MCL 750.539c; MSA 28.807(3) protects private conversations against eavesdropping accomplished through the wilful use of "any device." This protection indicates that the Legislature considered that a conversation can be private, yet can also be susceptible to eavesdropping through any device. Otherwise, it would have had no need to protect private conversations against such an intrusion. Indeed, were defendant correct that a conversation that a person knows is susceptible to eavesdropping through any device is not private, then the statutory protection against eavesdropping accomplished through any device would be null. This is because a conversation susceptible to eavesdropping with any device would, because of that characteristic, fall outside the protected class of private conversations, leaving no "private conversation" to be protected from eavesdropping with any device. Whenever possible, courts must give effect to every word, phrase, and clause in a statute. *Morey, supra* at 330. Therefore, to give effect to the statutory protection against eavesdropping accomplished through "any device," we must reject defendant's position.

Further, although a person who talks on a cordless telephone may know that technology makes it possible for others to overhear the conversation, that person also can presume that others will obey the criminal law. See *Papadimas v Mykonos Lounge*, 176 Mich App 40, 47; 439 NW2d 280 (1989); Prosser & Keeton, Torts (5th ed) § 33, p 201. Thus, although the victim may have known that her cordless telephone conversations could be wilfully intercepted with a device, she also could presume that others would not eavesdrop on her cordless telephone conversations using any device because doing so is a felony under the eavesdropping statutes, and is additionally prohibited by federal law. See 47 USC 1001 *et seq*. As a matter of law, it was not unreasonable for her to expect that her cordless telephone conversations were private.

We recognize that our holding differs with many decisions concluding that cordless telephone users cannot expect privacy in their telephone conversations. See, e.g., *People v Wilson,* 196 Ill App 3d 997, 1009-1010; 554 NE2d 545 (1990); *Salmon v State,* 206 Ga App 469, 470; 426 SE2d 160 (1993), *superseded by statute,* Ga Code Ann § 16-11-66.1; *McKamey v Roach,* 55 F3d 1236, 1239-1241 (CA 6, 1995). However, these cases were decided under statutes with language different from that of the Michigan eavesdropping statutes governing our decision in this case. Notably, other state courts have held that

cordless telephone users can expect privacy in their telephone conversations when those states' governing statutes have so provided. See, e.g., *State v Faford*, 128 Wash 2d 476, 486; 910 P2d 447 (1996); *State v Bidinost,* 71 Ohio St 3d 449, 460; 644 NE2d 318 (1994). In addition, although certain federal decisions, including *McKamey, supra,* held that there cannot be an expectation of privacy in cordless telephone conversations, federal law was subsequently amended to grant strict privacy protections to cordless telephone conversations. See 47 USC 1001. Thus, although our decision differs with several foreign authorities, it accords with current federal law, and accords full meaning to the Michigan eavesdropping statutes.

Under those statutes, whether a person can reasonably expect privacy in a conversation generally will present a question of fact. See *Dickerson, supra* at 851. For example, although a person is not precluded from having a reasonable expectation of privacy in a conversation held on a cordless telephone, a person who converses on a party line may not reasonably expect the conversation to be private because perhaps that person should know that others will be able to listen to the conversation. Many such conversations may be subject to "casual or hostile intrusion or surveillance," MCL 750.539a(1); MSA 28.807(1)(1), but the final determination will generally be for the factfinder.

10

## D. THE INSTANT CASE

In the instant case, we conclude that defendant was properly bound over for trial. Defendant argues that Joanne Stone could not have expected privacy in her cordless telephone conversations because of her particularized knowledge that Pavlik could intercept them. He bases his argument on an averment in the warrant affidavit, which stated that Pavlik had told Joanne that his scanner could intercept cordless telephone conversations. However, Joanne's testimony at the preliminary examination was that Pavlik had told her that he could listen to police signals, not cordless telephone conversations. Although this evidence is conflicting, Joanne's testimony provided a sufficient basis for the magistrate to find probable cause that defendant committed the charged felony. The conflicts in the evidence must be resolved by the trier of fact, not the magistrate. See *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989). Because the eavesdropping statutes do not preclude cordless telephone conversations from being "private," and because the evidence at the preliminary examination was sufficient for the magistrate to find probable cause of defendant's guilt, the magistrate did not abuse his discretion by binding defendant over for trial.

11

## III

In conclusion, although technology provides a means for eavesdropping, the Michigan eavesdropping statutes specifically protect citizens against such intrusions. Therefore, a person is not unreasonable to expect privacy in a conversation although he knows that technology makes it possible for others to eavesdrop on such conversations. The judgment of the Court of Appeals is affirmed.

CORRIGAN, C.J., and WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.