*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TELANE HADDEN,

        Plaintiff-Appellant,

v

PINE CREEK MANOR SKILL NURSING &
REHAB CENTER, LLC, also known as PINE
CREEK MANOR SKILLED NURSING & REHAB
CENTER and ADVANCED HEALTHCARE
HOSPITAL, doing business as PIONEER
SPECIALTY HOSPITAL,

        Defendants-Appellees.

UNPUBLISHED
October 10, 2024
11:32 AM

No. 367106
Wayne Circuit Court
LC No. 21-006336-CD

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

This case requires us to determine whether plaintiff Telane Hadden's public policy
wrongful discharge claim against defendant Pine Creek Manor Skill Nursing & Rehab Center,
LLC, a/k/a Pine Creek Manor Skilled Nursing & Rehab Center, LLC (Pine Creek), is preempted
by the Whistleblower's Protection Act, (WPA), MCL 15.361 *et seq.*, and whether the trial court
correctly dismissed her WPA claim against Advanced Healthcare Hospital, d/b/a Pioneer Specialty
Hospital (PSH). Our Supreme Court has made clear that the WPA does not preempt claims like
Hadden's, and we hold that the trial court erred by dismissing Hadden's claim against Pine Creek
as a matter of law. But we affirm the trial court's dismissal of Hadden's WPA claim against PSH
because she failed to establish a genuine dispute of material fact that she was an employee of PSH.

## I. BACKGROUND

### A. FACTS

Hadden worked as a licensed practical nurse at Pine Creek when Pioneer Healthcare
Management, owned by Fahim Uddin, acquired the nursing home in 2018. In February 2020,
Hadden became a registered nurse (RN) and, on or around March 6, 2020, she was hired as a

probationary RN at Pine Creek. According to Hadden, on May 18, 2020, she arrived for her midnight shift and discovered that, although she was working with two certified nurse assistants (CNAs), she was the only RN scheduled to oversee 41 residents at Pine Creek. Hadden texted Pine Creek's director of nursing, Jamie Ivory, to ask who else was scheduled to work because the RNs on the previous shift said they could not stay. According to Hadden, she let Ivory know that she did not feel safe working as the only RN in the building, she advised Ivory that scheduling only one nurse on duty posed safety risks to the residents, and Ivory responded that Hadden was being insubordinate. Hadden alleged that, when one of the afternoon nurses returned to work at about 12:30 a.m. on May 19, 2020, Ivory gave Hadden the choice to go home. Hadden asserted that she opted to leave because of Ivory's "inadequate response" to Hadden's staffing complaint. Hadden further alleged that, when she arrived for her next shift at Pine Creek on or about May 21, 2020, Ivory told Hadden that she was terminated for walking off her shift on May 19, 2020.

On May 25, 2021, Hadden filed a complaint against Pine Creek for wrongful discharge under the public policy exception to at-will employment. Thereafter, in August 2021, Hadden applied for a position as an RN at PSH, but stated that she did not know that PSH was also owned by Uddin through Pioneer Healthcare Management. Hadden interviewed with PSH's director of nursing, Megan Henson, and, according to Hadden, she noticed that PSH's logo looked similar to Pine Creek's logo, and she told Henson that she filed a wrongful discharge action against Pine Creek. According to Hadden, Henson said that Pine Creek and PSH had the same owner, but were different companies and, although Hadden testified that this confused her, Henson offered Hadden the job and she accepted it.

Henson told Hadden that she would be hearing from PSH's human resources department and Hadden spoke to someone who was later identified as Satoria McGruder a few days after her interview. Hadden testified that, when she disclosed to McGruder that she was terminated from her job at Pine Creek, McGruder told her that she would need to check whether Hadden could be rehired by PSH. The record reflects that McGruder determined that she could not send Hadden an offer of employment because Hadden was not eligible for rehire within Pioneer Healthcare Management. According to Hadden, she never received a start date for the job at PSH and no one would return her calls. For that reason, on November 4, 2021, Hadden filed an amended complaint and added a claim that PSH violated the WPA by effectively terminating her employment once PSH learned that she filed a lawsuit against Pine Creek.

B. MOTION FOR SUMMARY DISPOSITION

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10), and asked the trial court to dismiss Hadden's claims. Defendants specifically argued that Hadden could not maintain her claim that her termination from Pine Creek amounted to a wrongful discharge under the public policy exception to at-will employment and, to the extent Hadden's claim against Pine Creek could be interpreted as a claim under the WPA, she filed her complaint outside of the 90-day statutory limitations period under the act. Defendants further argued that Hadden was never an employee of PSH and, therefore, she could not have been terminated by PSH in violation of the WPA.

Following oral argument, the trial court ruled that Hadden could not maintain her public policy tort claim for her termination by Pine Creek because it was preempted by the WPA. For

that reason, the trial court ruled that, under MCR 2.116(C)(8), Hadden failed to state a claim on which relief could be granted. The trial court further ruled that Hadden failed to present evidence to create a genuine issue of material fact that she was an employee of PSH. Accordingly, pursuant to MCR 2.116(C)(10), the trial court dismissed Hadden's claim that PSH violated the WPA.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review a trial court's grant of summary disposition de novo. *Rivera v SVRC Industries Inc*, 338 Mich App 663, 668; 980 NW2d 777 (2021). This Court also reviews de novo the proper interpretation and application of the WPA. *Gay v Select Specialty Hosp*, 295 Mich App 284, 291-292; 813 NW2d 354 (2012).

As noted, the trial court granted summary disposition to defendants pursuant to MCR 2.116(C)(8) and (10). A motion for summary disposition pursuant to MCR 2.116(8) tests the pleadings alone. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 164; 934 NW2d 665, 672 (2019). In deciding a motion under this rule, the court must accept all factual allegations as true to determine whether the opposing party has stated a claim upon which relief can be granted.

A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. "The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial." *Rataj v City of Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014) (quotation marks and citation omitted). "When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

### B. PREEMPTION

The trial court dismissed Hadden's claim that her termination by Pine Creek fell within the public policy exception to at-will employment on the ground that her claim was preempted by the WPA. We agree with Hadden that the trial court erred by dismissing her public policy tort claim on this basis.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). "There is, however, an exception to the at-will employment doctrine based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. (cleaned up). Michigan courts have recognized that a discharge is contrary to public policy when the discharge is premised (1) on the employee's exercise of a right guaranteed by law, (2) on the employee's exercise of a duty required by law, or (3) on the employee's refusal to violate the law. *Id*. at 526. Although this list is not exhaustive, "our courts have yet to find a situation meriting extension beyond [these] three circumstances." *Id*.

-3-

According to Hadden, she was wrongfully terminated for reporting to Ivory, as the director of nursing at Pine Creek, what amounted to a violation of a provision of the Public Health Code. Accepting the facts in Hadden's pleadings as true, as we must under MCR 2.118(C)(8), Hadden informed Ivory about the risk to the 41 residents of the nursing home by not having enough skilled nurses on duty. Pursuant to MCL 333.21771(1), Hadden asserted that it amounted to harmful neglect of patients to have only one, newly-licensed RN on duty with five residents on ventilators as well as other patients on bilevel positive airway pressure machines (BiPAP). As Hadden further claimed, pursuant to MCL 333.21720a(2), Pine Creek had to staff one nurse for every 15 patients and had to have "personnel sufficient to provide continuous 24-hour nursing care and services sufficient to meet the needs of each patient in the nursing home." MCL 333.21720a(2).

Hadden asserted that the two CNAs scheduled to work with her on the overnight shift beginning on May 18, 2020 were not trained in cardiopulmonary resuscitation and were not qualified or even permitted to care for patients on ventilators or BiPAP machines. This was especially concerning to Hadden because of the COVID-19 pandemic in a facility with so many high-risk patients. MCL 333.21771(1)(6) prohibits a nursing home from dismissing or otherwise retaliating against an employee who makes a report of harmful neglect.[1]

The trial court agreed with defendants that Hadden's claim that her termination from Pine Ridge violated the public policy exception to at-will employment was preempted by the WPA. As this Court explained in *Hays v Lutheran Social Services of Michigan*, 300 Mich App 54, 59-59; 832 NW2d 433, 436 (2013):

> "The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). The purpose of the WPA is to protect the public by facilitating employee reporting of illegal activity. *Id*. at 631. It is the plaintiff's burden to establish a prima facie case under the WPA, which requires a showing that "(1) the plaintiff was engaged in a protected activity as defined by the WPA, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Manzo v Petrella*, 261 Mich App 705, 712, 683 NW2d 699 (2004).

A statute preempts a claim that a termination violates public policy when a statute explicitly prohibits the discharge of an employee acting in accordance with a statutory right and when that statute provides an exclusive remedy for violation of that explicit prohibition. *Stegall v Resource*

---

[1] Hadden also cited MCL 333.21720a(2) and alleged that she was arguably reporting medical malpractice to Ivory, but she concedes on appeal that this provision does not apply to the facts of her case. Further, to the extent Hadden's complaint asserted that she also reported JCAHO violations to Ivory, she does not argue on appeal that the trial court erred by dismissing this claim because JCAHO guidelines are not related to any legislative right or duty to establish a public policy wrongful discharge claim. *Suchodolski*, 412 Mich at 695-696. Thus, Hadden has waived this claim on appeal. *Walters v Nadell*, 481 Mich 377, 389-390; 751 NW2d 431 (2008).

*Technology Corp*, ___ Mich ___; ___ NW3d ___ (July 22, 2024) (Docket No. 165450); slip op at 18.

The WPA provides protection for two types of whistleblowers: "(1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action." *Shaw v Ecorse*, 283 Mich App 1, 10; 770 NW2d 31 (2009), quoting *Henry v Detroit*, 234 Mich App 405, 409; 594 NW2d 107 (1999). A "public body" includes cities or city employees and law enforcement agencies or law enforcement employees. MCL 15.361(d)(iii) and (v). In this case, the WPA plainly did not apply to Hadden's claim of wrongful termination by Pine Creek because she did not report and was not about to report a violation of law or regulation to a public body. Rather, Hadden reported her concern about inadequate nursing coverage to Ivory, who was Pine Creek's director of nursing.

In contrast to a claim under the WPA, a claim that a discharge violates public policy may be premised on internal reports of a plaintiff's good-faith belief about a violation of law or regulation. As our Supreme Court recognized in *Stegall v Resource* Technology, 509 Mich 1086-1087 (2022), this is so because limiting the public policy exception to external reports would not serve the welfare of state residents by protecting employees who report violations of law and because, if limited to public reports of wrongdoing, a claim that a discharge violated public policy would necessarily be preempted by the WPA. Because Hadden was not acting pursuant to the WPA, the WPA does not provide an exclusive—or any—remedy to her wrongful discharge claim and it, therefore, cannot preempt her public policy tort claim. *Stegall v Resource Technology Corp*, ___ Mich ___; slip op at 18. Accordingly, we reverse the trial court's order granting summary disposition to defendants under MCR 2.116(C)(8) on this ground.[2]

## C. WPA CLAIM AGAINST PSH

Hadden further contends that the trial court erred by granting summary disposition to defendants on her claim of retaliation by PSH under the WPA. We disagree.

Hadden alleged that PSH offered her a position as an RN in August 2021, Hadden accepted that position, and she believed she was an employee of PSH. Hadden asserted that, by terminating her employment, PSH violated the WPA because her lawsuit against Pine Creek constituted a report to a public body—the judiciary—about Pine Creek's violation of law.

The WPA, MCL 15.362, provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of

---

[2] Because our holding is based on the pleadings alone, it does not impact Hadden's burden of proving that she was wrongfully discharged in violation of public policy.

this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

As this Court explained in *McNeill-Marks v Midmichigan Med Center-Gratiot*, 316 Mich App 1, 16-17; 891 NW2d 528 (2016):

> To establish a prima facie case under the above provision, "a plaintiff must show that (1) the plaintiff was engaged in a protected activity as defined by the WPA, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). " 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998).

In their motion for summary disposition, defendants argued that Hadden failed to establish a genuine issue of material fact that she was ever actually an employee of PSH. According to defendants, if Hadden was not an employee of PSH, she could not maintain a claim that PSH discharged—or constructively discharged—her for filing a lawsuit against Pine Creek. The plain language of the statute, the WPA offers protection to an "employee." As our Supreme Court explained in *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001):

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).

The WPA defines "employee" as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied. Employee includes a person employed by the state or a political subdivision of the state except state classified civil service." MCL 15.361(a).

We agree with defendants that the trial court correctly ruled that Hadden failed to establish a genuine issue of material fact that she was an employee of PSH protected by the WPA. During her deposition, Hadden testified that, after she was discharged by Pine Creek, she knew that she was not eligible for rehire within any Pioneer Health Management company. Hadden admitted that she learned this in an e-mail she received a few days after her termination from Pine Creek in 2020. According to Hadden, she nonetheless applied for a job at PSH a couple of months after she filed a lawsuit against Pine Creek, claiming she did not know that PSH—Pioneer Specialty

-6-

Hospital—was part of Pioneer Health Management. Hadden testified that Henson offered her the position at PSH, Hadden accepted it, and Henson said Hadden would be hearing from the human resources department.

Hadden further testified that, after she talked to Henson, a PSH human resources representative, likely McGruder, called her and, when Hadden discussed her prior employment with Pine Creek, McGruder said she needed to check whether PSH could rehire Hadden "and that she would get in touch with [Hadden]" about it. Defendants presented an e-mail exchange between Henson and McGruder in which Henson stated that she sent information to McGruder for her to mail Hadden a job offer, but McGruder responded that she needed to find out if Hadden was "rehireable [sic] with the company before [she could] send an offer." Hadden conceded that she never received an offer letter from PSH and it is undisputed that she never began working in any capacity at PSH.

Again, under the WPA, an employee is a person who performs services for wages under an express or implied contract of hire. MCL 15.361(a). Although Hadden apparently seeks to rely on her subjective belief that she had an oral contract with PSH when she talked to Hansen and McGruder, Hadden performed no service for wages at PSH, she received actual notice that she was ineligible for a position at any Pioneer company, McGruder told Hadden that she first needed to find out if Hadden was eligible to be rehired, Hadden never received a written offer of employment, and she never performed any work at PSH. On the basis of this evidence, the trial court correctly ruled that Hadden failed to present evidence of a genuine factual dispute about whether she was employed by PSH. To the contrary, all evidence showed that Hadden never performed work for PSH and was never an employee of PSH. Because Hadden was not an employee entitled to any protection from wrongful discharge under the WPA, the trial court correctly granted summary disposition to defendants on this issue. MCL 15.361(a); MCL 15.362.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett